SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
　A Limited Liability Partnership
　Including Professional Corporations
PAUL A. WERNER, VA BAR NO. 48910
pwerner@sheppardmullin.com
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
Telephone:　202.747.1900
Facsimile:　202.747.1901

LISA M. MARTENS, Cal. Bar No. 195824
(*pro hac vice forthcoming*)
lmartens@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:　858.720.8900
Facsimile:　858.509.3691

Attorneys for Plaintiff DJO, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| DJO, LLC, a Delaware corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. CYBERSQUATTING [15 U.S.C. § 1125(d)];** |
| HARRY G. GARCIA, an individual, | |
| Defendant. | **2. TRADEMARK INFRINGEMENT [15 U.S.C. § 1114(1)];** |
| | **3. UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)];** |
| | **4. TRADEMARK INFRINGEMENT [Virginia Common Law]; and** |
| | **5. UNFAIR COMPETITION [Virginia Common Law];** |
| | **DEMAND FOR JURY TRIAL** |

-1-

Plaintiff DJO, LLC ("DJO"), by its attorneys Sheppard, Mullin, Richter & Hampton, LLP, as and for their complaint against Harry G. Garcia ("Defendant"), alleges as follows:

## THE PARTIES

1. DJO is a Delaware corporation having its principal place of business at 1430 Decision Street, Vista, California 92081.

2. On information and belief, Defendant is an individual residing in McLean, Virginia.

## NATURE AND STATUTORY BASIS OF ACTION

3. This action seeks relief for cybersquatting, federal trademark infringement, unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; trademark infringement in violation of Virginia common law; and unfair competition under Virginia common law.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant because, on information and belief: (i) Defendant resides in Virginia; (ii) Defendant does business and/or actively solicits business in Virginia; (iii) Defendant has continuous and ongoing business contacts with residents of Virginia; (iv) Defendant has intentionally engaged in acts targeted at Virginia that have caused harm within Virginia; and/or (v) Defendant has purposely availed itself of the privilege of conducting business in Virginia.

5. This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) because part of this action is based on the federal Lanham Act. This Court has supplemental jurisdiction over DJO's Virginia common law claims pursuant to 28

-2-
SMRH:479636377.2                                                                                    COMPLAINT

U.S.C. § 1367(a) because those claims arise out of the same common nucleus of operative facts as the Lanham Act claims, and the Court's exercise of jurisdiction over the state law claims will promote judicial economy, convenience, and fairness to the parties.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c) because, on information and belief, Defendant resides in this District, Defendant conducts business in this District, and a substantial part of the acts or omissions giving rise to the claims asserted herein occurred and/or had effects in this District.

## FACTUAL BACKGROUND

**A.  DJO's History, Business, and Valuable Intellectual Property**

7. DJO is a leading global developer, manufacturer, and distributor of high-quality medical devices that provide solutions for musculoskeletal health and pain management, including electrical stimulation products offered under its federally registered trademark COMPEX.

8. DJO has commercially used, by and through its predecessor in interest, the distinctive COMPEX mark in connection with medical devices, namely electronic muscle stimulators for twenty (20) years, since at least 1986 (the "COMPEX Mark" or "Mark").

9. The Mark is strong and distinctive when used in connection with electronic muscle stimulator products. The Mark uniquely distinguishes DJO's goods from those offered by its competitors.

10. As a company that depends upon both the quality of its products and the reliability of its brand, DJO has spent substantial sums securing and protecting its intellectual property interests in the Mark.

11. Among other efforts, DJO has obtained two federal trademark registrations to protect the value of its Mark in connection with electronic muscle stimulator products. *See* U.S. Reg. Nos. 1,454,091 and 2,565,088 (the "COMPEX Registrations") as attached as **Exhibit A**.

12. The U.S. Patent and Trademark Office granted the COMPEX Registrations incontestable status.

13. The COMPEX Registrations constitute prima facie evidence that the Mark is valid and that DJO is entitled to the exclusive use of the Mark in commerce throughout the United States on the goods listed in the COMPEX Registrations.

14. Since its first use of the mark twenty years ago, DJO has spent substantial sums to advertise and promote the Mark. For instance, DJO prominently displays the Mark and provides information about its popular COMPEX products on the Internet via its websites located at https://www.djoglobal.com/our-brands/compex and https://www.compexusa.com/ .

15. Over the years, DJO has expended substantial amounts of time, effort, and money to ensure that the relevant public associates the COMPEX mark with its goods. As a result of this time, effort, and money invested, DJO and the COMPEX mark have achieved a reputation for excellence in the medical device industry.

16. DJO enjoys substantial demand and goodwill for its products marketed under the COMPEX mark, and the COMPEX mark has enjoyed widespread success. Accordingly, the Mark is a significant asset of DJO's business.

17. By virtue of the substantial sales of products under the COMPEX mark over the last twenty years, and relatedly, the sums spent to promote the COMPEX mark, the relevant public has come to exclusively associate the COMPEX mark with electronic muscle stimulators that originate from DJO.

-4-

**B.     Defendant's Unlawful Conduct**

18.     On information and belief, Defendant owns and/or operates at least one domain name which makes unauthorized use of DJO's Mark, *compex.com* (the "Infringing Domain Name").  The Infringing Domain Name was registered by or on behalf of Defendant on or around July 20, 1993, well after DJO's first use of the DJO Mark.  On information and belief, Defendant has control of the Infringing Domain Name, including the ability to transfer the domain name.

19.     On information and belief, Defendant previously used the *compex.com* domain name in connection with an information technology and telecommunications business that became defunct in or around 2010.

20.     In 2014, DJO became aware of the *compex.com* domain name and website.  At that time, the *compex.com* website stated that it was under construction and it displayed advertisement links for wireless telecommunications goods and services.  Below is a screen capture of the *compex.com* domain name on or about July 21, 2014.



21. As Defendant's business was inoperative, DJO made a generous, good faith offer to purchase the Infringing Domain name from Defendant. Defendant refused and, instead, demanded an extraordinary amount of money for financial gain.

22. Two years later, in early June 2016, upon a visit to the *compex.com* domain name, DJO noticed that the website was still under construction, but instead of showing links relating to telecommunications services as it had years prior, the *compex.com* website displayed advertisement links to DJO's *compexusa.com* website as well as links to DJO's competitors. Below is a screen capture of the *compex.com* domain name on June 15, 2016.



23. On June 16, 2016, DJO sent a letter to Defendant alerting Defendant to DJO's trademark rights, and of its violations of the Lanham Act as a result of its use of the Infringing Mark and Infringing Domain Name. DJO demanded that Defendant immediately cease and desist from further use of the Infringing Mark, including by ceasing use of the Infringing Domain Name and transferring it to DJO, as the rightful trademark owner.

24. On June 22, 2016, Defendant responded to DJO's June 16, 2016 letter denying DJO's allegations and Defendant also removed all the content from the *compex.com* website.

25. On information and belief, Defendant used the Infringing Domain Name with an intent to trade on the goodwill of DJO's well-known COMPEX mark, as Defendant's use of the Infringing Domain Name increased the likelihood that consumers who search on the Internet to find DJO's COMPEX products would instead find Defendant's Infringing Domain Name, which included links to DJO's competitor's products.

26. On information and belief, Defendant used an identical COMPEX trademark, COMPEX (the "Infringing Mark"), to advertise, market and cause to be sold electronic muscle stimulators that directly competed with DJO's COMPEX products.

27. Defendant has never been authorized by DJO to use the COMPEX mark or any variations thereof, and has never been granted authority to assert or suggest any affiliation with or endorsement by DJO. DJO has never cooperated with Defendant in any manner, and in particular, has never worked with Defendant in connection with the promotion and sale of its products.

28. On information and belief, Defendant willfully used the Infringing Mark with an intent to trade on the substantial goodwill and demand associated with DJO and its well-known Mark.

29. On information and belief, as a result of Defendant's use of a confusingly similar mark to promote competing electronic muscle stimulators, consumers who encountered the Infringing Mark were likely confused as to the source of Defendant's products, or as to their connection to or affiliation with DJO and its similar products offered under the Mark.

30. As of the filing of this Complaint, Defendant continues to control the Infringing Domain Name, and refuses to transfer the Infringing Domain Name to its rightful owner, DJO.

## FIRST CLAIM FOR RELIEF

### Cybersquatting

### [Section 43 of the Lanham Act, 15 U.S.C. § 1125(d)]

31. DJO incorporates by reference the factual allegations set forth above.

32. As alleged above, Defendant has used the domain name *compex.com* without DJO's authorization and with a bad faith intent to profit from the COMPEX Mark. The domain name *compex.com* is confusingly similar to the COMPEX Mark and damages the distinctive quality of the COMPEX Mark.

33. The COMPEX Mark was distinctive at the time Defendant began using the Infringing Domain Name and remains distinctive today.

34. On information and belief, Defendant used the Infringing Domain Name with the knowledge that it was confusingly similar to the COMPEX Mark. Defendant has continued to use and/or maintains the domain registration for the Infringing Domain Name even after DJO sent Defendant a letter regarding DJO's senior trademark rights.

35. Defendant's use of the Infringing Domain Name in order to promote and sell competing products with full knowledge of DJO's rights demonstrates Defendant's bad faith intent to profit from the COMPEX Mark.

36. As a direct and proximate result of Defendant's acts alleged herein, DJO has been injured in its business and property, and has sustained substantial damage to its business, goodwill and reputation in an amount not presently known.

37. DJO is entitled to the maximum statutory damages, pursuant to 15 U.S.C. § 1117(d), in the amount of $100,000, for each act of Defendant's cybersquatting.

38. DJO has no adequate remedy at law. Unless Defendant is enjoined from committing these unlawful acts as set forth above, and the Infringing Domain Name registered by Defendant is ordered transferred to DJO, DJO will continue to suffer irreparable harm. DJO is therefore entitled to injunctive relief against the continued use of the Infringing Domain Name and to the transfer of Defendant's domain name *compex.com* under 15 U.S.C. § 1125(d)(1)(C).

## SECOND CLAIM FOR RELIEF

### Trademark Infringement

### [Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)]

39. DJO incorporates by reference the factual allegations set forth above.

40. DJO owns the federally registered COMPEX Mark. The COMPEX Mark is strong and distinctive and designates DJO as the source of all products advertised, marketed, sold or used in connection with the Mark.

41. DJO is the senior user of the COMPEX Mark, as it began using of the Mark in interstate commerce prior to Defendant's use of its confusingly similar Infringing Mark.

42. On information and belief, Defendant was aware of the COMPEX Mark prior to using the Infringing Mark to advertise and promote competing products. Thus, Defendant's unauthorized use of the Infringing Mark was knowing, intentional, and willful.

43. On information and belief, through its use of the confusingly similar Infringing Mark, Defendant intended to confuse and mislead consumers into believing that DJO somehow authorized, sponsored, approved, licensed or participated in Defendant's use of the Infringing Mark.

44. In fact, there is no formal connection or association between DJO and Defendant. Further, Defendant does not have authorization, license or permission from DJO to advertise,

-10-

market or sell its products under the Infringing Mark, which is used on products that are confusingly similar to the products offered and sold under the COMPEX Mark.

45. On information and belief, Defendant's use of the Infringing Mark likely caused confusion as to the origin and authenticity of Defendant's products, and likely caused others to believe that there was a relationship between DJO and Defendant.

46. As a direct and proximate result of Defendant's wrongful conduct, DJO has been damaged.

47. Defendant's actions thus constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

48. DJO has no adequate remedy at law. Unless Defendant is enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Infringing Mark, DJO will continue to suffer irreparable harm. Accordingly, DJO is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendant, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further trademark infringement in violation of the Lanham Act.

49. Pursuant to 15 U.S.C. § 1117(a), DJO is also entitled to recover damages it has sustained as a result of Defendant's wrongful conduct, and the gains, profits and advantages that Defendant has obtained as a result of its wrongful conduct. At present, DJO is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendant has obtained by reason of its wrongful conduct described herein.

50. Defendant's conduct was intentional and, DJO is therefore entitled to an award of treble damages against Defendant pursuant to 15 U.S.C. § 1117(a).

51. Defendant's willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, DJO is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Unfair Competition and False Designation of Origin

### [Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)]

52. DJO incorporates by reference the factual allegations set forth above.

53. DJO owns the federally registered COMPEX Mark. The COMPEX Mark is strong and distinctive and designates DJO as the source of all products advertised, marketed, sold or used in connection with the Mark.

54. DJO is the senior user of the COMPEX Mark, as it began using the Mark in interstate commerce prior to Defendant's use of the Infringing Mark.

55. On information and belief, Defendant was aware of the COMPEX Mark prior to using the Infringing Mark to advertise and promote competing products. Thus, Defendant's unauthorized use of the Infringing Mark was knowing, intentional, and willful.

56. On information and belief, through its use of the confusingly similar Infringing Mark, Defendant intended to confuse and mislead consumers into believing that DJO was related to or affiliated with Defendant.

57. In fact, there is no formal connection or association between DJO and Defendant, nor has DJO authorized, licensed, or given permission to Defendant to use the COMPEX Mark or Defendant's Infringing Mark in any manner.

58. On information and belief, Defendant's use of the Infringing Mark likely caused confusion as to the origin and authenticity of Defendant's products, and caused others to believe that there was a relationship between DJO and Defendant.

-12-

59. As a direct and proximate result of Defendant's wrongful conduct, DJO has been damaged.

60. Defendant's actions thus constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

61. DJO has no adequate remedy at law. Unless Defendant is enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the COMPEX Mark, DJO will continue to suffer irreparable harm. Accordingly, DJO is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendant, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further trademark infringement in violation of the Lanham Act.

62. Pursuant to 15 U.S.C. § 1117(a), DJO is also entitled to recover damages it has sustained as a result of Defendant's wrongful conduct, and the gains, profits and advantages that Defendant has obtained as a result of its wrongful conduct. At present, DJO is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendant has obtained by reason of its wrongful conduct described herein.

63. Defendant's conduct was intentional, and DJO is therefore entitled to an award of treble damages against Defendant pursuant to 15 U.S.C. § 1117(a).

64. Defendant's willful acts make this an exceptional case under 15 U.S.C. § 1117(a), and thus, DJO is entitled to an award of attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

**Trademark Infringement**

**[Virginia Common Law]**

65. DJO incorporates by reference the factual allegations set forth above.

66. DJO has valid and protectable common law rights in the COMPEX Mark.

67. DJO is the senior user of the COMPEX Mark.

68. Defendant's use of the confusingly similar Infringing Mark in connection with competing products likely caused confusion as to the origin of Defendant's products, and/or as to DJO's association with them.

69. Defendant's actions alleged herein constitute common law infringement of the COMPEX Mark.

70. On information and belief, Defendant's infringement of DJO's rights has been willful.

71. Defendant's wrongful acts have permitted Defendant to receive substantial profits based upon the strength of DJO's reputation and the substantial goodwill built up in the COMPEX Mark.

72. As a result of Defendant's infringing actions, DJO has been and will continue to be irreparably harmed.

73. DJO has no adequate remedy at law. Unless Defendant is enjoined from committing the unlawful acts described herein, including without limitation, use of the COMPEX Mark, DJO will continue to suffer irreparable harm. Thus, DJO is entitled to an injunction restraining Defendant, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further acts of trademark infringement in violation of Virginia common law.

## FIFTH CLAIM FOR RELIEF

### Unfair Competition

### [Virginia Common Law]

74. DJO incorporates by reference the factual allegations set forth above.

75. By engaging in the wrongful conduct described herein, Defendant willfully intended to trade on the strength and reputation of DJO and/or the COMPEX Mark, to cause injury to DJO, and to pass off its goods as those of DJO.

76. Defendant's wrongful use of the Infringing Mark in connection with the advertising and sale of electronic muscle stimulator products likely caused confusion, mistake and deception as to the affiliation, connection and association of Defendant with DJO and/or as to the origin, sponsorship and approval of Defendant's products sold under the Infringing Mark.

77. As a direct and proximate result of Defendant's unlawful acts, DJO has suffered and will continue to suffer injury.

78. DJO has no adequate remedy at law. Unless Defendant is enjoined from committing the unlawful acts described herein, DJO will continue to suffer irreparable harm. Thus, DJO is entitled to an injunction restraining Defendant, its officers, agents and employees, and all persons acting in concert with them, from engaging in any further unfair competition in violation of Virginia common law.

79. As a result of Defendant's acts described herein, Defendant has been unjustly enriched at DJO's expense and DJO has suffered a competitive injury and damages in an amount to be proven at trial.

80. On information and belief, Defendant acted with oppression, fraud, malice and willfully intended to trade on the strength, reputation and goodwill associated with the COMPEX

Mark, to mislead the purchasing public, and to cause injury to DJO; thus, DJO is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, DJO prays for judgment against Defendant as follows:

1. That Defendant be held liable for federal trademark infringement, unfair competition and false designation of origin, and cybersquatting in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(d); trademark infringement and unfair competition under Virginia common law;

2. For an order enjoining Defendant, its agents, employees, representatives, partners, joint ventures, and/or anyone acting on behalf of, or in concert with Defendant from:

   A. operating the website located at *www.compex.com*, or any colorable imitation thereof, or any domain name that is likely to confuse, mislead, or deceive purchasers, DJO's customers, or members of the public, that goods manufactured, distributed, advertised, sold and/or offered for sale on that website originate from DJO or that such goods have been sponsored, approved, or licensed by or associated with DJO or are in some way connected to or affiliated with DJO;

   B. advertising, marketing or causing to be sold any products under the Infringing Mark, or any colorable imitation(s) of the COMPEX Mark, including any mark that incorporates the term "Compex" or any other phrase, term, or logo that is likely to cause confusion with DJO or its COMPEX Mark.

   C. using in commerce or facilitating the use in commerce of the Infringing Mark, or any other phrase, term, mark, trade name, logo or design that falsely represents that, or is likely to confuse, mislead, or deceive purchasers, DJO's customers, or members of the public

-16-

to believe that products advertised, marketed, sold and/or offered for sale by Defendant originate from DJO, or that such goods have been sponsored, approved, or licensed by or associated with DJO, or are in some way connected to or affiliated with DJO, including without limitation any mark that incorporates the term "Compex";

        D.    doing or allowing any act or thing which is likely to injure DJO's business reputation or goodwill;

        E.    engaging in any acts of federal, state or common law trademark infringement, false designation of origin, unfair competition, or cybersquatting that would damage or injure DJO; and

        F.    participating or assisting in any of the above activities.

3.    That Defendant and Defendant's officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms or corporations in active concert or participation with them be required to transfer to DJO the registration for the domain name *compex.com*; and any other domain name which incorporates the term "Compex."

4.    That Defendant, pursuant to 15 U.S.C. § 1116(a), be required to file with the Court and to serve on DJO within thirty (30) days after service of an injunction order as requested herein, a report in writing under oath setting forth in detail the manner and form in which she has complied with the Court's order.

5.    That an accounting be ordered of all of the profits realized by Defendant, or others acting in concert or participation with it, from Defendant's unauthorized use and infringement of the COMPEX Mark.

6.    That Defendant be required to account for and pay DJO all gains, profits, and advantages derived from its acts of infringement and other unlawful conduct, as alleged herein.

7. That all gains, profits and advantages derived by Defendant from its acts of infringement and other unlawful conduct alleged herein be deemed to be in constructive trust for the benefit of DJO.

8. That judgment be entered against Defendant for DJO's actual damages as a result of Defendant's acts of infringement and other unlawful conduct alleged herein, and for any additional profits attributable to Defendant's wrongful conduct, according to proof.

9. That Defendant's unlawful conduct as alleged herein be deemed a willful violation of DJO's intellectual property rights.

10. That the Court declare this an exceptional case.

11. That DJO's actual damages be trebled pursuant to 15 U.S.C. § 1117(a).

12. That DJO be awarded maximum statutory damages for violations of the Anti-Cybersquatting provisions of the Lanham Act in an amount not less than $100,000 for each act of cybersquatting pursuant to 15 U.S.C. § 1117(d).

13. That DJO recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

14. That DJO be awarded punitive and exemplary damages pursuant to Virginia common law.

15. That DJO recover the costs of this suit.

16. That DJO be granted pre-judgment and post-judgment interest on the damages caused by Defendant.

17. That DJO be granted such other and further relief as the Court deems just and proper.

Dated: October 31, 2016

                    Respectfully submitted,

                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                    By       /s/ Paul A. Werner
                            PAUL A. WERNER

                       Attorneys for Plaintiff DJO, LLC

SMRH:479636377.2         COMPLAINT

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff DJO hereby demands a jury trial on all issues triable as of right by a jury.

Dated: October 31, 2016

                        Respectfully submitted,

                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                        By         /s/ Paul A. Werner
                                 PAUL A. WERNER

                            Attorneys for Plaintiff DJO, LLC